IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIM. NO. 02-189** |
| | : | |
| **RAYMOND SHELTON** | : | |

**Diamond, J.**                                                                                                                    **January 7, 2009**

### MEMORANDUM

The Third Circuit has determined that since entering into a Plea Agreement in 2002 with Defendant, Raymond Shelton, the Government has repeatedly sought to evade the Agreement's restrictions respecting the sentence the Government may seek.  The Circuit has thus twice remanded this matter to a new judge for resentencing in accordance with the Agreement.  See United States v. Shelton, 91 Fed. Appx. 247, 249 (3d. Cir. 2004) (non-precedential) ("Shelton I");  United States v. Shelton, 179 Fed. Appx. 809, 813 (3d Cir. 2006) (non-precedential) ("Shelton II").  After the matter was remanded to me, I conducted a hearing on May 2 and December 19, 2008, and resentenced Defendant.  In this Memorandum, I more fully set forth the bases for my sentencing decisions.  See United States v. Vargas, 477 F.3d 94, 101 (3d Cir. 2007) ("[B]ecause district court judges render sentencing decisions orally and spontaneously from the bench after the presentation of numerous arguments, we do not expect them to deliver a perfect or complete statement of all of the surrounding law.") (internal quotations omitted).

## I. BACKGROUND

In March 2002, the grand jury returned a seventeen count indictment against Defendant, charging him with drug and weapons offenses. In August 2002, Defendant agreed to plead guilty to: (1) conspiracy to distribute MDMA (Count 1); (2) possession of firearms by a convicted felon and aiding and abetting (Counts 5, 8, 12); (3) possession and transfer of a machine gun and aiding and abetting (Count 11); and (4) conspiracy to possess and transfer a machine gun (Count 17). The Government agreed to seek dismissal of the remaining Counts.

### A. The Parties' Guidelines Stipulations

In their written Plea Agreement, the Parties stipulated to the calculation of Defendant's base offense levels under the Sentencing Guidelines. With respect to Defendant's firearms offenses, the Parties stipulated to "a base offense level under the Sentencing Guidelines of 20." (Plea Agreement ¶ 8.b.) They further stipulated that the firearms offenses were subject to: 1) a two-level enhancement because one of the firearms had an obliterated serial number; and 2) another two-level enhancement because the offenses involved more than three but less than seven firearms. (Id.) With respect to the narcotics offense in Count I, the Parties stipulated to "a base offense level under the Sentencing Guidelines of 26 . . . subject to a two-level enhancement...because [it] involved possession of a dangerous weapon." (Id. ¶ 8.a.) The Parties further agreed that because Defendant had demonstrated an acceptance of responsibility and had timely pled guilty, he was entitled to a three-level reduction in his offense level. (Id. at ¶ 8c-d.)

The Parties reserved the right to "argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, [and] adjustments and departures." (Id. ¶ 8). They also agreed that "these stipulations are not binding upon

either the Probation Department or the Court, and . . . the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed." (Id.)

The Agreement provided that Defendant would cooperate with the Government's investigation of any crimes about which Defendant had knowledge. (Id. at ¶ 3.b.) The Government would then decide whether or not to file a § 5K1.1 motion for a downward departure based on substantial assistance. (Id. ¶ 3.k-l.)

Finally, the Agreement provided that: "The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose." (Id. at ¶ 7).

      **B.**      **The August 2002 Plea Hearing**

Defendant initially pled guilty before the Honorable Harvey Bartle, III. During his plea hearing, Defendant admitted that in addition to selling ecstasy worth thousands of dollars, he sold the following weapons to a Government informant: a Glock 10 mm handgun, a .380 caliber handgun with a fully loaded magazine and extra ammunition, an AB-10 handgun with an obliterated serial number, and an AK-47 type rifle capable of fully automatic fire, along with extra ammunition. (8/14/02 Tr. at 18-23.) Defendant also admitted that he had attempted to supply an undercover DEA agent with an "Uzi" automatic machine gun. (Id. at 22.)

During the plea hearing, the Government recited the terms of the Plea Agreement, including the stipulations, and stated that the Parties "recognize that these stipulations are not binding upon the Court or upon the Probation Department." (Id. at 9.) Defendant stated that he understood that

Judge Bartle would "sentence [him] on the basis of [his] guilty plea and in accordance with the sentencing guidelines and other applicable law, *but only after considering a presentence report*." (Id. at 17 (emphasis added).) Defendant also acknowledged that the Court could sentence him to a more or less severe sentence than that provided by the Guidelines, and he would not be entitled to withdraw his guilty plea if the Court imposed a more severe sentence than he expected. (Id. at 25-26.)

### C.     The Presentence Investigation Report

At Judge Bartle's direction, the Probation Department prepared a PSI and a sentencing recommendation. Probation grouped the drug count and the firearms counts together pursuant to § 3D1.2(c), which provides that counts shall be grouped together "when one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c) (2000 ed.). Probation then calculated Defendant's Guidelines range based on the firearms offenses, which it concluded comprised the most serious counts of the group. See U.S.S.G. § 3D1.3 (when counts are grouped together pursuant to § 3D1.2(a)-(c), the offense level applicable to the entire group is the highest offense level of the counts in the group). Contrary to the Parties' stipulation that the base offense level was 20, Probation determined that it was 26 because the offenses: 1) involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and 2) were committed after Defendant sustained at least two felony convictions for crimes of violence. See U.S.S.G. § 2K2.1(a)(1) (2000 ed.). Probation then added the following enhancements: (1) two levels because the offenses involved five firearms; (2) one level because one of the firearms had an obliterated serial number; and (3) four levels because Defendant used or possessed a firearm in connection with another felony offense

(conspiracy to distribute MDMA). Probation then reduced the offense level by three for acceptance of responsibility, resulting in a total offense level of 30.

Because two of Defendant's prior convictions were for felonies involving violence, Probation determined that Defendant is a career offender and so assigned him a criminal history category of VI. See U.S.S.G. § 4B1.1.

Based on an offense level of 30 and a criminal history category of VI, Defendant's Guidelines range was 168-210 months imprisonment, two to three years of supervised release, and a $15,000 to $2,250,000 fine. Probation recommended 189 months imprisonment, three years of supervised release and a $1,000 fine.

      **D.**      **The November 2002 Sentencing Hearing and <u>Shelton I</u>**

At the time of Defendant's first sentencing, the Guidelines were mandatory. The Government did not move for a downward departure pursuant to § 5K1.1. Rather, his stipulation to a base offense level of 20 for the firearms offenses notwithstanding, the then-prosecutor stated that the PSI had correctly set forth a base offense level of 26 for the firearms offenses. He then urged the Court to adopt the PSI and impose a "substantial sentence." Shelton I, 91 Fed. Appx. at 248.

Judge Bartle accepted and adopted the facts and conclusions set out in the PSI and sentenced Defendant to 188 months in prison, three years of supervised release, a $750 fine, and a $600 special assessment. On appeal, Defendant argued that the Government had improperly urged a base offense level higher than 20 for the firearms offenses. Id. at 248. The Third Circuit agreed, ruling that the Government breached its "contract" with Defendant because it took a position that "conflicted directly with the government's unambiguous and specific Agreement stipulation that Shelton's base offense level was 20." Id. The Government thus acted "outside any reasonable expectations that

5

[Defendant] could have had about how the United States would conduct itself." Id. Because Defendant did not wish to withdraw his guilty plea, the Court afforded him the remedy of "specific performance of the [Plea] Agreement": it vacated Defendant's sentence and remanded for resentencing before another judge. Id. The Court directed that at resentencing the Government was obligated to state that it was bound by the Plea Agreement. The Circuit also advised that "the [resentencing] court may independently determine the appropriate sentence." Id. Finally, the Circuit ruled that "our *de novo* review of the Guidelines reveals that the district judge's decision to adopt the PSI's calculation of Shelton's base offense level of 26 . . . was correct." Id. at 249.

### E. The January 2005 Sentencing and Shelton II

On remand, the matter was assigned to the Honorable John R. Padova, who agreed that Probation had correctly calculated that the firearms offenses had a base offense level at 26, resulting in a now-advisory Guidelines range of 168 to 210 months. Once again, the Government did not move for a downward departure under § 5K1.1. Judge Padova sentenced Defendant to 168 months incarceration on Count 1, four terms of 120 months incarceration on each of counts 5, 8, 11, and 12, and 60 months incarceration on count 17, all to run concurrently. Judge Padova also sentenced Defendant to three years of supervised release; a $2,500 fine; and a $600 special assessment.

Defendant again appealed, arguing that: (1) the Government had again breached the Plea Agreement by advocating a base offense level higher than 20 for the firearms offenses; and (2) "Shelton I obligated the District Court to impose a sentence reflecting the stipulated sentencing range of 77 to 96 months imprisonment." Shelton II, 179 Fed. Appx. at 813.

The Third Circuit agreed with Defendant's first argument:

> Though the Government did state that it was 'bound by the plea agreement,' it violated the Agreement when it advocated a sentence higher than the range contemplated by the stipulated base level offense of 20, and stated that the court would be 'wise to give heavy weight to the guidelines' even though they are now advisory and would result in a longer sentence.

Id. at 812.  The Court stated that even if the Government believed that Probation had correctly calculated Defendant's base offense level, it was obligated to exercise the "option of silence" rather than urge a base offense level higher than 20.  Id.  The Court observed that Defendant had a reasonable expectation that the Government would seek a sentence within a Guidelines range resulting from a base offense level of 20 (77 to 96 months), and instructed that "[o]n remand for resentencing, the Government shall not advocate a sentence beyond that range."  Id. at 813.

Like the Shelton I Court, the Shelton II Court rejected Defendant's argument that the sentencing judge was obligated to impose a sentence within the stipulated sentencing range of 77 to 96 months.  The Court noted, however, that Shelton I did not require the sentencing court "to apply a base level of 26" to the firearms offenses.  Id.

### F.     Defendant's 2008 Sentencing

On remand, this matter was assigned to me.  I conducted a sentencing hearing on May 2 and December 19, 2008.  Once again, the Government did not move for a downward departure. Remarkably, in its Sentencing Memorandum, the Government asked me to impose a sentence of 151 to 188 months incarceration.  (See Doc. No. 162.)  As I explain below, the Government reasoned that this recommendation did not contravene the holdings of Shelton I and II.  I did not agree.  At the outset of the May 2nd proceeding, I observed that the Shelton II Court explicitly ordered that "[o]n remand for resentencing the Government shall not advocate a sentence beyond [the 77 to 96 month] range." (5/2/08 Tr. at 3:12-15.); Shelton II, 179 Fed. Appx. at 813.  Accordingly, I announced that

the Government's requested sentence of 151 to 188 months "was plainly in violation of the Third Circuit's order." (5/2/08 Tr. at 3:16-22.) I indicated that I would ask the Parties to brief whether, in addition to striking the Government's Memorandum, I was obligated "to disqualify myself in light of the fact that the Government had for the third time exposed the sentencing judge to a [requested] sentence that the Third Circuit has said is illegal or contrary to the Plea Agreement." (Id. at 3:22-25, 4:1-4.) The Government immediately withdrew its Sentencing Memorandum and stated that it would "consistent with the Third Circuit's opinion . . . advocate a sentence within the range of seventy-seven to ninety-six months . . ." (Id. at 4:8-16.) I then stated

> for the record that the Government's request for a hundred and fifty-one to a hundred and eighty-eight month sentence in my view is illegal. I will completely disregard it, and it will form no part in my decision as to what sentence will be imposed in this case.

(Id. at 4:17-22.)

Even though the Government had again breached the Plea Agreement by requesting a sentence outside the stipulated range, Defendant did not seek to withdraw his guilty plea. Rather, he again sought specific performance of the Agreement: he argued that the Government's requested sentence was improper, and asked me to impose a sentence at the low end of the stipulated range. (See Doc. No. 161; 12/19/08 Tr. at 14:19-23.) I nonetheless was concerned that in light of the Government's initial breach of the Agreement, Defendant might feel that specific performance could only be had before another judge. Accordingly, I asked defense counsel whether the Government's withdrawal of its Memorandum, its request for a 77 to 96 month sentence, and my decision to disregard the Government's initial, illegal request "satisf[ies] you and your client as to whether I can continue to preside in this sentencing." (Id. at 4:23-25.) Counsel indicated that he and his client

8

were satisfied that I could continue.  (Id. at 5:1.)

Defendant then presented, inter alia, the testimony of his former counsel, who explained why, when he pled guilty, Defendant believed that: 1) his Guidelines range would be 77 to 96 months; and 2) the Government would seek a downward departure pursuant to § 5K1.1.  (Id. at 14-20.) Defendant also raised a *pro se* objection to the Probation Department's determination that his base offense level for the firearms offenses was 26.  (Id. at 11:13-25, 12:1-7.)  At Defendant's request, I allowed his former counsel to explain the basis of this objection.  (Id. at 10:13-25, 11:1-3.) Because the Government exercised the "option of silence," the Probation Officer who had prepared the PSI was not present, and the Shelton II Court had indicated that I was not required to find that the base offense level was 26, I continued the hearing to consider Defendant's objection.

The hearing resumed on December 19, 2008, when I overruled Defendant's objection, explaining that I agreed with the determination that Defendant's base offense level was 26.  With the enhancements and reductions I described earlier, I determined that Defendant's offense level was 30, his criminal history category was VI, and his advisory Guidelines range was 168 to 210 months in prison.

I then heard additional testimony from Defendant's friends and family members.  I noted that I had disregarded all the Government's earlier sentencing contentions: 1) the now-withdrawn request in its 2008 Sentencing Memorandum; and 2) the sentencing arguments it had made before Judges Bartle and Padova.  The Government reiterated that it sought a sentence within the stipulated range of 77 to 96 months.  (12/19/08 Tr. at 3:15-24.)  Accordingly, in fashioning Defendant's sentence, I

> considered...the Government's recommendation of a sentence of 77 to 96 months...[and defense counsel's] request that I sentence the defendant within the stipulated range of 77 to 96 months.

(12/19/08 Tr. at 18.) After enumerating, *inter alia*, the factors set out in 18 U.S.C. § 3553(a), I sentenced Defendant as follows: 168 months incarceration on Count 1, four terms of 120 months incarceration on each of Counts 5, 8, 11, and 12, and one term of 60 months incarceration on Count 17, all to be served concurrently; three years supervised release; a $750 fine; and a $600 special assessment. Although I obviously considered the Guidelines in fashioning Defendant's sentence, I noted my belief that the sentence I imposed was also "reasonable and appropriate . . . exclusive of the Guidelines." (12/19/08 Tr. at 18:19-21.)

## II.   DISCUSSION

The most significant issues I addressed during the May 2nd and December 19th proceedings were: 1) the Government's improper request for a sentence outside the stipulated range; and 2) Defendant's *pro se* objection to Probation's calculation of his base offense level. I will address each issue in turn.

### A.   The Government's Improper Request for a Sentence Outside the Stipulated Range

The Third Circuit has twice stressed that because, in entering into the 2002 Plea Agreement, Defendant had "relinquished many of his constitutional rights," he was entitled to the Government's "strict adherence to the terms of the Agreement." Shelton I, 91 Fed. Appx. at 248; see Shelton II, 179 Fed. Appx. at 810-11. Although the Government initially contravened Shelton I and II, I believe it ultimately complied with these decisions and gave Defendant the benefit of his bargain.

In its 2008 Sentencing Memorandum, the Government argued that instead of basing

Defendant's Guidelines calculation on the firearms offenses, I should base it on the drug charge, which the Parties had stipulated carries a base offense level of 26. (Doc. No. 162 at 9-11.) The Government then argued that a superseding "career offender" offense level of 32 applies to the drug charge. With a criminal history category of VI, this resulted in a 151 to 188 month Guidelines range. (Id.)

Taken alone, the Government's reading of the Plea Agreement has some plausibility. In the context of Shelton I and II, however, its reading was plainly incorrect. See also United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998) ("[W]e will not permit the government to rely upon a 'rigidly literal' approach to the construction of the terms of the plea agreement.") A "career offender" sentence based on the drug charge was not contemplated in the Plea Agreement. Accordingly, the Government's initial "position [at the 2008 sentencing] was correspondingly outside any reasonable expectations that Shelton could have had about how the United States would conduct itself pursuant to the Agreement." Shelton I, 91 Fed. Appx. at 248. Rather, in light of the Third Circuit's rulings, the only reasonable reading of the 2002 Agreement is that "the Government [would] not advocate a sentence beyond [77 to 96 months]." Shelton II, 179 Fed. Appx. at 813. In withdrawing its Memorandum and twice urging me to impose a sentence within the stipulated range, however, I believe the Government finally complied with Shelton II. Id. at 811 ("While the Government need not endorse the terms of its plea agreements enthusiastically, it is the rule of this Circuit that the government must adhere strictly to the terms of the bargains it strikes with defendants.") (internal quotations and citations omitted). I thus determined that the Government had performed as required by the Plea Agreement. Defendant effectively ratified that determination when he declined my invitation to disqualify myself and allow another judge to sentence him.

11

Compare United States v. Kurkculer, 918 F.2d 295, 302 (1st Cir. 1990) (Government's belated compliance with Plea Agreement inadequate to cure breach where Defendant requested specific performance before a new judge). See Nolan-Cooper, 155 F.3d at 240-41 (declining to address question of whether Government's initial misstatement of its sentencing recommendation constitutes a breach requiring resentencing).

   **B.**  **Defendant's Objection to the Guidelines Calculation**

Having independently reviewed the PSI, I agreed with Probation and the Shelton I Court that the base offense level for Defendant's firearms offenses is 26. Probation applied the 2000 version of the Guidelines to Defendant. It provides a base offense level of 26 both for cases involving unlawful receipt, possession, or transportation of firearms or ammunition, and for prohibited transactions involving firearms or ammunition:

> if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 2k2.1(a)(1) (2000 ed.). The Application Notes to § 2K2.1(a)(1) provide that "'crime of violence' . . . [is] defined in §4B1.2 (Definitions of Terms Used in Section 4B1.1)." Section 4B1.2(a) defines "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Defendant argued that under this definition, his 1993 Pennsylvania state court conviction for simple assault was not a "crime of violence." The Third Circuit has ruled to the contrary. United States v. Dorsey, 174 F.3d 331, 332 (3d Cir. 1999) (the Pennsylvania statutory crime of simple assault is a

"crime of violence" under § 4B1.1); United States v. Green, 282 Fed. Appx. 200, 202 (3d Cir. 2008) (confirming that *Dorsey* remains good law); United States v. Wolfe, No. 06-3675, 2008 WL 5146618 (3d Cir. Dec. 5, 2008) (the defendant's prior conviction for simple assault could serve as a predicate crime of violence for career offender purposes).  I thus determined that because Defendant had two prior convictions for "crimes of violence" – his 1989 Pennsylvania conviction for aggravated assault and his 1993 conviction for simple assault – his base offense level was 26. See U.S.S.G. § 2K2.1(a).  Accordingly, I overruled Defendant's objection.

### III. CONCLUSION

In reviewing the § 3553(a) factors on December 19th, I noted, *inter alia*, that Defendant's instant crimes were "grave," that his criminal record dates back to his pre-teenage years – including eight juvenile adjudications and three adult felony convictions, and that "the public needs protection from further crimes [Defendant] might commit." (12/19/08 Tr. at 16-17.)  I then imposed a heavier sentence than that jointly requested by the Parties because I did not find the stipulated sentence range to be reasonable.

BY THE COURT.

/s Paul S. Diamond

_____
Paul S. Diamond, J.